IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JAMES EDWARD COX                                                                PLAINTIFF

v.                          Civil No. 6:23-cv-06112-SOH-BAB

CORRECTIONAL OFFICER GLADY ESCOBAR,
Omega Unit; ABIGAIL (MALOCH) MORROW,
Administration Review Officer, Omega Unit; DEPUTY
BRADLEY BAKER, Lt., Correctional Officer, Omega
Unit; SERGEANT KIMBERLY PREVATT, Correctional
Officer, Omega Unit; MAJOR FREDDIE OTTS, Omega
Unit; and DOE, Internal Affairs Investigator, Omega Unit          DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, James E. Cox ("Cox"), filed this civil rights action pursuant to 42 U.S.C. § 1983 on November 1, 2023, in the Eastern District of Arkansas. (ECF No. 1). The case was transferred to this Court by Order entered on November 7, 2023. (ECF No. 3). Cox proceeds *pro se* and *in forma pauperis.*

Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making this Report and Recommendation on the Motion for Partial Summary Judgment on the issue of exhaustion, brief, and statement of undisputed facts filed by Defendants Escobar, Baker, Otts, and Morrow. (ECF Nos. 26-28). Cox responded to the Motion. (ECF Nos. 42-43). Defendants elected not to file a reply. The Motion is ready for decision.

## I.       BACKGROUND

In Claim One of the Complaint, Cox alleges that on March 15, 2023, in response to him talking when a group of inmates had been told to be quiet, Defendant Escobar struck him in the

head.   (ECF No. 2 at 5).   As a result, Cox developed a knot on his head, suffered numerous headaches some severe enough to make him nauseous, and suffered from anxiety.   *Id.*   Following the grievance process, Cox states that on March 24th, he was seen by Defendant Otts and another unidentified internal affairs officer.   *Id.*   Cox was questioned about the incident and told a voice stress test was used.   *Id.*   Cox was given a consent form to sign but the box was already checked indicating he consented.   *Id.*   When he questioned why this was necessary, he was told by the unidentified officer that if he did not sign, he would be sent to the hole for failure to cooperate in the investigation.   *Id.* at 6.   Defendant Otts just "sat there letting all of this take place, making him as guilty of corruption as anyone else involved."   *Id.*

In Claim Two, Cox alleged that he had to submit multiple requests on dates from February 15, 2023, to March 20, 2023, to obtain any law library time.   (ECF No. 2 at 7).   During this entire period, Cox indicates he only received two hours of law library time.   *Id.*   The "law library" was contained in a computer program which Cox indicates he did not know how to operate.   *Id.* When he asked Defendant Morrow for assistance, Cox was told he was not allowed to speak.   *Id.* From the inmate handbook, Cox indicates he was under the impression that "a clerk of some kind (knowledgeable in the program)" would help.   *Id.*   In reply to his requests for law library time, Cox indicates Defendant Morrow stated her primary job was handling disciplinaries and grievances and she would "run the law library when she had time."   *Id.*

In Claim Three, Cox alleges that on March 9, 2023, he had a Zoom conference call scheduled with his attorney.   (ECF No. 2 at 9).   Because of technical difficulties, the conference was done by phone.   Despite his protests, Defendant Baker remained in the room—only three feet from him—during the entire call.   *Id.*   Cox asserts this violated his right to have confidential

conversations with his attorney.  *Id.*  Cox was told she remained in the room for security reasons. *Id.*  Defendant Baker indicated that if the conference had been by Zoom it would have been monitored outside the office via the room's window.  *Id.*  Cox asserts the phone was in clear view of the window.  *Id.*  During a later phone conference, Cox indicates he was monitored through the window.  *Id.*

In Claim Four, Cox asserts that on March 22, 2023, Defendant Prevatt read his legal mail when he asked her to sign and seal a legal envelope addressed to Phil Votaw and Associates, Attorney at Law.  (ECF No. 2 at 10).  Defendant Prevatt pulled the letter out, put on her reading glasses, and began reading.  *Id.*  When Cox protested, Defendant Prevatt responded that she was supposed to read it to ensure it was legal mail.  *Id.*  Cox indicates the letter was about this lawsuit. *Id.*  Cox contends this violated his attorney/client privilege.  *Id.*  He maintains the letter should have only been checked for contraband.  *Id.*

## II.    LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical

doubt as to the material facts." *Matsushita*, 475 U.S. at 586.   "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)).   "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).   "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.    DISCUSSION

Defendants have now moved for summary judgment contending Cox failed to exhaust his administrative remedies as to Defendants Escobar, Baker, Otts, and Morrow prior to filing this lawsuit.

### A.  The Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") in 42 U.S.C. § 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002).   In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id*. at 218 (internal quotation marks and citation omitted).   The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim

4

to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. A prisoner's remedies are exhausted "when [the] inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits." *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012).

The Eighth Circuit Court of Appeals has recognized only two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures, or (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005) (explaining a prisoner is only required to exhaust those administrative remedies that are "available" and any remedies that prison officials prevent a prisoner from utilizing are not considered available).

### B. The Grievance Procedure

The Arkansas Division of Community Correction ("ACC") resident grievance and appeal process is set forth in Administrative Directive ("AD") 15-08. (ECF No. 26-2 at 1). "The grievance procedure must be posted on the employee and resident bulletin boards, and in the facility law library. Residents and employees must be given written notification of the grievance procedure upon arrival at the center." *Id*. at 2.

Step One of the procedure requires residents to "first attempt to informally resolve complaints, grievances, problems, or incidents by submitting a 'Complaint Form for Residents' or discussing the matter with an appropriate person such as a counselor, the Residential Supervisor assigned to his/her housing area, or the Shift Supervisor on duty." *Id*. at 3. If an informal resolution does not occur or no response has been made to the informal complaint, "the resident may submit a formal written grievance within **5 days of the occurrence** to the Grievance Officer

or the Center Supervisor's Designee (Designee) on a 'Grievance Form for Residents.'" *Id.* (emphasis added). Receipt of the formal grievance is to be acknowledged. *Id.* A written response must be given by the Grievance Officer or Designee within 30 calendar days unless the period has been extended. *Id.* at 4.

Step Two of the grievance procedure provides that "[a]ny grievance decision can be appealed to the Center Supervisor through the normal chain of command." (ECF No. 26-2 at 4). If unsatisfied with this decision, "[t]he grievant is entitled to appeal the Center Supervisor's decision within 5 days after receipt of the Center Supervisor's decision by using the Resident Appeal Form." *Id.*

The Deputy Director of Residential Services has thirty calendar days to "review the initial grievance, the Center Supervisor's investigation and response, and the resident's appeal, and if necessary, conduct a separate investigation of the matter and respond to the grievant in writing." (ECF No. 26-2 at 4). The decision of the Deputy Director of Residential Services if final. *Id.* The grievance officer is charged with maintaining a log "containing pertinent information regarding the filing, acknowledgement, and dispositive of grievances." *Id.*

## C.  Application

As a preliminary matter, § 1997e(a) clearly applies here: (1) Cox was incarcerated at the Omega Supervision Sanction Center ("Omega"), an ACC facility, at the time he filed his Complaint; and (2) the factual predicate of his claims stem from occurrences at Omega. 42 U.S.C. § 1997e(a).

The Court turns to the question of whether Cox exhausted his administrative remedies prior to filing suit. According to the declaration of Christopher Laginja ("Laginja"), an Administrative

Review Officer at Omega, once a formal written grievance has been filed "all aspects of the grievance procedure must be followed." (ECF No. 26-1 at 2). "The decision of the Deputy Director of Residential Services is final and concludes the grievance process." *Id.*

Having reviewed Cox's grievances file, Laginja indicates Cox filed two grievances prior to filing this lawsuit. (ECF No. 26-1 at 3). Grievance OM-23-00144 involves Defendant Prevatt's reading Cox's legal mail. *Id.* In Grievance OM-23-00145, "Cox grieves that he did not receive a response to a complaint he wrote, and he recites the contents of the complaint he previously submitted." *Id.* Laginja asserts that "[t]his grievance does not exhaust any claim in this lawsuit." *Id.*

Laginja asserts he has no record of the following:

(1) any grievance concerning Defendant Escobar striking Cox on the head or Defendant Otts' involvement in the investigation of that alleged incident;

(2) a grievance concerning Defendant Morrow's failure to provide Cox adequate access to a law library "**exhausted through appeal per policy**;" and

(3) a grievance concerning Defendant Baker listening to Cox's phone call with his lawyer.

*Id.* at 3 (emphasis added). Laginja therefore maintains Cox "has not fully exhausted his claims" as to Defendants Escobar, Otts, Morrow, or Baker.

As Defendants apparently concede Cox has fully exhausted his claims as to Defendant Prevatt, the Court need not examine Grievance OM-23-00144.[1] Grievance OM-23-00145 was

---

[1] This grievance shows it was rejected by Defendant Morrow despite it saying Cox had spoken to the supervisor on duty, Defendant Baker. (ECF No. 26-3 at 1). Cox submitted a formal grievance which is marked received on March 25, 2023, and assigned grievance number OM-23-00144. (ECF No. 42 at 10). On March 28th, Defendant Morrow wrote that the grievance was rejected as "either non-grievable, untimely, duplicative, frivolous, or vexatious." *Id.* at 11.

submitted by Cox on March 27, 2023, and provides as follows:

> After speaking to SOD (LT Baker) about original complaint I wrote a complaint about no review on alleged violation of rights, in 5 day timeframe.   The original was said to never been received as answer on complaint #2 about this.   Original complaint was dropped on Fri 3-17-23 at chow.   It essentially stated:   on 3-21-23 I received a reply for request sent to ARO for law library and a 1983 form, at or about 7:10pm[.] The request stated:   I would like to request law library, also need to request a 1983 form.   You (Mrs. Maloch) told me I could use the affidavit form instead, because you needed to make new copies of 1983 form.   Would just like to have 1983 from.   Thanks:   I never received any reply about 1983 form also I asked how to file motion for [ineffective] counsel while in your office you told me to use affidavit for that also.   This is inadequate law library, and violates my rights.

(ECF No. 26-3 at 3).

On March 28, 2023, the grievance was acknowledged by Defendant Morrow and sent to Warden White.   (ECF No. 26-3 at 4).   A response to the grievance was due by April 25, 2023, which Cox indicates was after his release date of April 21, 2023.   (ECF No. 42 at 14).   On April 26, 2023, Defendant Morrow entered a note that says: "After further review of this grievances, it was determined to have been rejected instead of processed, due to the complaint about not getting seen in the Law Library in a timely manner, and the grievance was about him needing a 1983 form."   (ECF No. 26-3 at 4).

In his summary judgment response, Cox argues the grievance procedure was manipulated either by the Defendants or the Administration which impeded his efforts to exhaust.

Cox has submitted a Complaint Form dated March 17, 2023, about Defendant Escobar striking him in the head on March 15th.   (ECF No. 42 at 3).   The Complaint form is marked as having been received on March 20th and Cox as having been seen on March 22nd.   The response was this incident is being investigated.   *Id.*   On March 23rd, Cox checked the box that his complaint had not been resolved.   *Id.*   Cox has not included in his exhibits a formal Grievance

Form on this issue.

However, Cox states he never received notification about the results of the investigation. (ECF No. 42 at 23).   He argues the investigation impeded his time for filing a grievance and points to the section of AD 15-08 providing that the time limits for responding may be extended in five business day increment to complete investigative work.   *Id.*   This section provides that residents must receive written notice of "such extension prior to the expiration of the 30-calendar day time period in which the Center Supervisor or Deputy Director of Residential Services must respond." *Id.*   Additionally, the provision states that "[e]xpiration of the time limit at any stage of the process may be considered by the grievant to be a denial and entitles the grievant to move to the next level of the process, unless the grievance has received written notice of an extension."   *Id.*

The Court agrees with Cox that it is somewhat confusing to be required to proceed with a formal grievance while an investigation is pending.   However, the section of AD 15-08, Cox relies on for extending the time applies only to the response time to a grievance not to the time for filing a grievance.   Cox does not indicate he received notice of any extensions of time due to the investigation.   Moreover, in the same paragraph grievants are advised that they may treat any failure to respond in a timely manner as a denial and proceed with the grievance procedure.   Cox failed to exhaust the grievance procedures with respect to Defendant Escobar.   As this is the only occurrence Defendant Otts was alleged to have been involved in, Cox has also failed to exhaust his administrative remedies as to Defendant Otts.

Cox submitted a Complaint Form dated March 22, 2023, in which he stated he had submitted a Complaint form on March 14th regarding Defendant Baker remaining in the room during his phone conference with his attorney.   (ECF No. 42 at 9).   The form was marked

reviewed by Defendant Baker, the same person he was complaining about on March 16th.[2]  *Id.*
Cox indicates he was told by Defendant Baker that she had to remain in the room because it was a
security risk to leave him alone in the room with the phone.  *Id.* at 8.  Cox noted the phone was
in clear sight of the window.  *Id.*  Cox wrote that when he had another phone conference on
March 22nd, Correctional Officer Henson had stood outside the window.  *Id.* at 9.  Cox asserts
this clearly contradicts the statements made by Defendant Baker.  *Id.*  Cox maintains his
attorney/client privilege was violated as were his residents' rights "according to #14, #17 and #5."
*Id.*

The March 22, 2023, Complaint Form is marked received and as Cox being seen on March
24th.  (ECF No. 42 at 8).  The response is that the first phone call was addressed in a prior
Complaint Form.  *Id.*  Further it was stated the "whole issue" was outside the five-day timeframe.
*Id.*  The same day, Cox checked the box as indicating the issue had no been resolved and signed
and dated the form.  *Id.*  Cox has not included in his exhibits a formal Grievance Form on this
issue.  Cox has therefore failed to exhaust his administrative remedies with respect to Defendant
Baker.

Cox submitted a Complaint form dated March 23, 2023, in which he states he has not
received a response to his prior complaint about "inadequate law library" within the five-day
period.  (ECF No. 42 at 4).  He then writes that he would like to see the process followed as stated
in the handbook.  *Id.*  He indicates he requested law library time and was told by Defendant
Morrow that it was not her priority and the grievance process took precedence because of the time

---

[2] Undoubtedly allowing the review of a grievance by the subject of the grievance greatly
diminishing the chances of resolution.  However, nothing in AD 15-08 seems to preclude this
practice.

frame. *Id.* The form is marked received on March 24th and Cox as having been seen on March 27th by Defendant Morrow, the individual he was complaining about. *Id.* Defendant Morrow wrote that she had never received a complaint from Cox regarding the law library. *Id.* She notes, however, that he had been to the law library twice, and he was on the list to go a third time. *Id.* Defendant Morrow noted there was no set time frame for Cox to be given access to the law library, "it's [illegible] off the list." *Id.* Cox checked the box indicating the "complaint has NOT been resolved and I want to pursue this matter (options include submitting a grievance)." *Id.* Cox signed the below the checked box on March 27th. *Id.* Cox has not submitted a formal Grievance Form on this issue. Cox failed to exhaust his administrative grievances regarding Defendant Morrow.

## IV.    CONCLUSION

For these reasons, it is recommended that the Defendants' Motion for Partial Summary Judgment be **GRANTED** as to all claims asserted against Defendants Escobar, Baker, Otts, and Morrow.

This leaves for later resolution Cox's claim against Defendant Prevatt.

**Status of the Referral:   This case should remain referred for all matters not recommended for dismissal in this Report and Recommendation.**

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).   The failure to file timely objections may result in waiver of the right to appeal questions of fact.**

**The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 13th day of November 2024.

/s/ Barry A. Bryant
_____
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE